# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

AISHA NAMUWONGE, individually, and on
behalf of all other similarly situated individuals,

        Plaintiff,

        v.

BROOKDALE SENIOR LIVING, INC. and
KRONOS, INC.,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)

Case No.: 1:19-cv-03239

Hon. Sharon Johnson Coleman

**KRONOS INCORPORATED'S MEMORANDUM IN SUPPORT OF**
**MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

BACKGROUND ...................................................................................................................1

    A.    The Biometric Information Privacy Act .....................................................1

    B.    Plaintiff's Complaint....................................................................................2

    C.    Legal Standard ............................................................................................3

ARGUMENT .........................................................................................................................4

I.    PLAINTIFF'S SECTION 15(A) AND (D) CLAIMS MUST BE DISMISSED.................4

    A.    BIPA only applies to those who exercise dominion and control over data .............4

    B.    Kronos is not alleged to have possessed Plaintiff's data .........................................5

    C.    Plaintiff's section 15(a) claim fails in any event .....................................................5

    D.    Plaintiff's section 15(d) claim fails in any event .....................................................6

        1.    BIPA distinguishes between "disclosure" and "storage and transmission"........................................................................................6

        2.    Plaintiff alleges no facts to support a section 15(d) "disclosure" claim ......7

II.    PLAINTIFF'S SECTION 15(B) CLAIM MUST BE DISMISSED ..................................8

    A.    In the employment context, only employers must comply with section 15(b)........8

    B.    Section 15(b)'s notice and consent requirements govern only those that directly "collect" or "capture" an individual's biometric data..............................10

        1.    Section 15(b) applies only to direct collectors of biometric data .............10

        2.    BIPA's structure and purpose confirm that only direct "collectors" are obligated to procure informed written consent prior to collection ...........12

        3.    Construing section 15(b) to apply more broadly would produce absurd results and render BIPA unworkable ......................................................12

    C.    Plaintiff does not allege that Kronos directly "collected" or "captured" her biometric data.......................................................................................................13

i

III.     PLAINTIFF'S FAILURE TO PLEAD NEGLIGENCE, RECKLESSNESS, OR INTENT PROVIDES ADDITIONAL GROUNDS FOR DISMISSAL ....................................................14

CONCLUSION ........................................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................4, 8

*Brickstructures, Inc. v. Coaster Dynamix, Inc.*, 2017 WL 4310671 (N.D. Ill. Sept. 28, 2017) ..................................................................................................................8

*Brooks v. Ross*, 578 F.3d 574 (7th Cir. 2009) ....................................................4, 8, 13

*Citizens United v. Schneiderman*, 882 F.3d 374 (2d Cir. 2018) ....................................8

*Equal Opportunity Comm'n v. Cummins Power Generation Inc.*, 313 F.R.D. 93 (D. Minn. 2015) ...................................................................................................9

*Figueroa v. Kronos, Inc.*, No. 19-cv-01306 (N.D. Ill.)...................................................6

*Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564 (1982) .........................................12

*Kerlin v. Chic. Bd. of Elections*, 2017 WL 5295680 (N.D. Ill. Nov. 13, 2017) ........................3, 4

*Lindsey v. Macias*, 907 F.3d 517 (7th Cir. 2018) .........................................................5

*Monroy v. Shutterfly, Inc.*, 2017 WL 4099846 (N.D. Ill. Sept. 15, 2017) ....................11

*Rivera v. Google Inc.*, 238 F. Supp. 3d 1088 (N.D. Ill. 2017).....................................14

*Vigil v. Take-Two Interactive Software, Inc.*, 235 F. Supp. 3d 499 (S.D.N.Y. 2017) ..................................................................................................................11

**STATE CASES**

*Andrews v. Kowa Printing Corp.*, 838 N.E. 2d 894 (Ill. 2005) ......................................9

*Boaden v. Dep't of Law Enf't*, 267 Ill. App. 3d 645 (1994) ..........................................9

*Dana Tank Container, Inc. v. Human Rights Comm'n*, 687 N.E.2d 102 (Ill. App. 1997) ..................................................................................................................10

*Honeywell Intern., Inc. v. Dept. of Revenue of State of Ill.*, 851 N.E.2d 79 (2006)....................4, 5

*In re D.W.*, 827 N.E.2d 466 (2005)...............................................................................10

*In re Marriage of Goesel*, 2017 IL 122046..................................................................9

*Papadakis v. Fitness 19 IL 116, LLC*, 2018 IL App (1st) 170388.................................15

*People v. Hanna*, 800 N.E.2d 1201 (Ill. 2003) ...................................................................9, 11, 14

*People v. Russell*, 492 N.E.2d 960 (Ill. App. 1986)...........................................................................7

*People v. Trainor*, 752 N.E.2d 1055 (Ill. 2001)............................................................................14

*Pooh-Bah Enter., Inc. v. Cnty. of Cook*, 905 N.E.2d 781 (Ill. 2009).......................................10, 11

*Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186 .................................................4, 7, 9, 10

## STATUTES

740 ILCS 14/1 ......................................................................................................................................1

740 ILCS 14/5 ........................................................................................................................1, 11, 13

740 ILCS 14/10 ........................................................................................................................ *passim*

740 ILCS 14/15(a) .........................................................................................................................2, 4

740 ILCS 14/15(b) .....................................................................................................................2, 9, 10

740 ILCS 14/15(c) ...............................................................................................................................2

740 ILCS 14/15(d) ....................................................................................................................2, 4, 7

740 ILCS 14/15(e) .........................................................................................................................2, 7

740 ILCS 14/20 ..................................................................................................................................14

## OTHER AUTHORITIES

*Black's Law Dictionary* (10th ed. 2014)................................................................................ *passim*

*Merriam-Webster* (2018) ...............................................................................................7, 8, 10

## INTRODUCTION

Plaintiff Aisha Namuwonge's Class Action Complaint (the "Complaint") claims that Defendant Kronos, Incorporated ("Kronos") violated three provisions of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq.*, when her <u>employer</u>, Brookdale Senior Living, Inc. ("Brookdale"), "captured" her fingerprints[1] for use as a means of authentication in its employee timekeeping system and stored them "in [Brookdale's] Kronos employee database(s)." (Compl. ¶¶ 32–33.) Plaintiff does not allege that Kronos collected or possessed her purported biometric data or ever allowed it to be hacked or compromised. Plaintiff purports to represent a putative class of potentially thousands of Brookdale employees who seek to bring BIPA claims against Kronos and recover significant damages from Kronos. But Plaintiff fails to plausibly allege that Kronos owed or violated any duty under BIPA. Each claim is fatally flawed and should be dismissed.

## BACKGROUND

### A. The Biometric Information Privacy Act

BIPA was enacted in 2008 in an effort to promote the use of biometric technology in Illinois.[2] BIPA sought to encourage the development and use of biometric technology by imposing certain requirements on private entities that possess or collect biometric data. *See* 740 ILCS 14/10. Only actual possession and direct collection of biometric data—not the sale of biometric technology—trigger BIPA's provisions.

---

[1] Kronos disputes Plaintiff's claims that she scanned a "fingerprint." Kronos denies that its timekeeping devices collect fingerprints, biometric identifiers, or biometric information as defined by BIPA. *See* 740 ILCS 14/10. For the purposes of this motion, Plaintiff's allegations must be taken as pled. The use of the term "biometric" or "biometric data" in this memorandum is not a concession that any data falls within BIPA's scope. Kronos reserves any/all arguments regarding the nature of the finger scans at issue in this lawsuit.

[2] *See* 740 ILCS 14/5(a) ("The use of biometrics is growing in the business and security screening sectors and appears to promise streamlined financial transactions and security screenings.").

BIPA imposes distinct sets of obligations on possessors and collectors of biometric data. Entities that are "in possession" of biometric data must develop publicly available retention schedules and destruction deadlines. 740 ILCS 14/15(a). They cannot sell or otherwise profit from the data or disclose, re-disclose or otherwise disseminate the data except in certain situations. § 15(c)–(d). Possessors must also exercise reasonable care in storing and transmitting the data, and when protecting the data from unauthorized disclosure. § 15(e).

BIPA requires something more of collectors—those that that directly "collect, capture, purchase, receive through trade, or otherwise obtain a person's . . . biometric information" from the individual. § 15(b). Collectors of data must provide written notice to the individuals that their biometric data is being collected and explain the purpose and duration for which it is being stored. *Id.* Collectors must also obtain prior consent via, in the employment context, a written release between the employer and employee. § 10. Possession is BIPA's outer regulatory limit; notice and consent are further restricted solely to direct collectors. BIPA's structure avoids placing duplicative or impractical compliance requirements on entities and limits potentially sprawling liability that would threaten the technology's future—a future it was enacted to protect.

### B. Plaintiff's Complaint

Nothing in the Complaint suggests that Kronos is either a collector or possessor under BIPA. Kronos plays a very limited role in this case: "Brookdale uses an employee time tracking system supplied by Kronos," and upon collecting its employees' data, Brookdale "store[s it] in [Brookdale's] Kronos database(s)." (Compl. ¶¶ 32–33.) According to Plaintiff, "[w]hen employees are hired by Brookdale, they are required to have their fingerprints captured and stored . . . ." (*Id*. ¶ 32.) Brookdale then requires its employees to "use their fingerprints to clock-in and clock-out for attendance." (*Id*. ¶ 34.) Plaintiff works for Brookdale as a utility worker. (*Id*. ¶ 44.) "As a condition of employment," Plaintiff "was required to scan her fingerprint each time she

clocked in for work and clocked out of work." (*Id.* ¶¶ 45, 47.) In administering this system, Plaintiff claims that Brookdale "fail[ed] to comply with [BIPA's] mandates." (*Id.* ¶¶ 74, 84.) Per Plaintiff, then, Kronos did nothing more than supply a time clock system to Brookdale—a Delaware company. (*Id.* ¶ 14.) Brookdale subsequently introduced the system in Illinois and stored employee data *it* collected on "***its*** Kronos database(s)." (*Id.* ¶¶ 32, 46 (emphasis added).)

Plaintiff brings three separate counts against Kronos. First, Plaintiff incorrectly asserts that Kronos violated section 15(a) by failing to provide a publicly available retention schedule or destruction guidelines. (*Id.* ¶¶ 72–81.) Second, Plaintiff claims that Kronos violated section 15(b)'s notice and consent provisions. (*Id.* ¶¶ 82–92.) Finally, she claims that Kronos violated section 15(d) by "systematically disclos[ing]" her biometric data to "other, currently unknown, third parties, which host the biometric data in their data centers." (*Id.* ¶¶ 35, 56.) Plaintiff does not explain how Kronos could have accrued duties under BIPA when it never collected or possessed any biometric data and when Brookdale was the only party alleged to have control of the biometric system or to have stored any data from that system. (*Id.* ¶¶ 32–33.) Undeterred, Plaintiff summarily seeks damages from Kronos for herself and other Brookdale employees of $5,000 for "*each* willful and/or reckless violation of BIPA," or alternatively, $1,000 for "*each* negligent violation," without pleading facts to support either willfulness or negligence. (*Id.* ¶¶ 81, 92, 102.)

### C.    Legal Standard

When ruling on a motion to dismiss, "this Court accepts all well-pleaded facts as true and draws all reasonable inferences in the plaintiff's favor." *Kerlin v. Chic. Bd. of Elections*, No. 16-cv-7424, 2017 WL 5295680, at *2 (N.D. Ill. Nov. 13, 2017). To satisfy their pleading burden, a plaintiff must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "That is, the allegations must raise the possibility

of relief above the 'speculative level.'" *Kerlin*, 2017 WL 5295680 at *2 (citation omitted). Crucially, a plaintiff cannot satisfy *Twombly* by "merely parrot[ing] statutory language of the claims that they are pleading . . . rather than providing some specific facts to ground those legal claims." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

## ARGUMENT

## I.  PLAINTIFF'S SECTION 15(A) AND (D) CLAIMS MUST BE DISMISSED

The public privacy policy and disclosure provisions set forth in sections 15(a) and (d) govern only possessors—entities that are actually "in possession" of an individual's biometric data. 740 ILCS 14/15(a), (d). To come within BIPA's purview at all, an entity must *at least* possess a person's biometric data. The Complaint is devoid of any allegations that Kronos possessed Plaintiff's biometric data. Thus her claims under sections 15(a) and (d) must be dismissed.

### A.  Sections 15(a) and (d) apply only to those who exercise dominion and control over data

The term "possession" is well-defined legally. In construing BIPA, this Court must "ascertain and give effect to . . . the plain and ordinary meaning of the language used in the statute." *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶ 24. With respect to possession:

> . . . a man is said to possess or to be *in possession* of anything of which he has the apparent control, or from the use of which he has the apparent power of *excluding others* . . . [A]ny of the usual outward marks of ownership may suffice, *in the absence of manifest power in someone else* . . . .

*Black's Law Dictionary* (10th ed. 2014) (citation omitted) (emphasis added). Likewise, under Illinois law, one does not possess an item "unless he has the ability, at a given time, to exercise dominion and control over [it]." *Honeywell Intern., Inc. v. Dept. of Revenue of State of Ill.*, 851 N.E.2d 79, 85 (Ill. App. 2006); *accord Lindsey v. Macias*, 907 F.3d 517, 521 (7th Cir. 2018).

4

Crucially, "possession" contemplates the *exclusion of others*. *See Black's Law Dictionary* (10th ed. 2014) ("the right under which one may exercise control over something to the exclusion of all others"; "the exclusive use of a material object"; "the detention or use of a physical thing with the intent to hold it as one's own"). Thus Plaintiff must plead that Kronos exercised dominion and control over her biometric data, to the exclusion of others.

### B. Kronos is not alleged to have possessed Plaintiff's data

The Complaint lacks any suggestion that Kronos exercised *any* dominion and control over Plaintiff's biometric data—much less "to the exclusion of all others." Taken as true, it actually compels the conclusion that Kronos did not possess her data.

The sole fact alleged as to Kronos is that it supplied an "employee time tracking system" to Brookdale. (Compl. ¶ 33.) In the story Plaintiff tells, Brookdale—not Kronos—exercised dominion and control over her data. According to Plaintiff, Brookdale collected her biometric data and then "subsequently stored Plaintiff's fingerprints in *its* [Brookdale's] Kronos database(s)." (*Id.* ¶ 46 (emphasis added); *see also id.* ¶ 46.) Plaintiff contends that Brookdale uses the database to "monitor the time worked by Brookdale hourly employees." (*Id.* ¶ 3 (emphasis added).) Absent is any suggestion that Brookdale delegated its control over the data to Kronos or that Kronos had any ability to exclude Brookdale from its use. *See, e.g.*, *Black's Law Dictionary* (10th ed. 2014) ("[Possession is] the exclusive use of a material object.").

Plaintiff's Complaint demonstrates that Kronos did not possess her biometric data. As such, neither section 15(a) nor (d)—both of which hinge upon possession—applies to Kronos. Plaintiff's claims under each section must be dismissed.

### C. Plaintiff's section 15(a) claim fails in any event

Plaintiff's allegation that Kronos did not provide her with a BIPA-compliant retention schedule should be disregarded. (Compl. ¶ 74.) As set forth above, Kronos owes no duty to have

a retention schedule for data it is not alleged to possess and in fact does not possess. Put simply, Kronos owes Plaintiff nothing under section 15(a). Kronos nevertheless does have a publicly available retention schedule for data. (*See* Ex. A, Kronos Data Privacy Policy.) Plaintiff's counsel are well aware of this fact, moreover, having filed other BIPA class action complaints asserting that Kronos's policy exists and is publicly available.[3] Thus Plaintiff's section 15(a) claim must be dismissed because Kronos has a policy that meets the requirements of section 15(a), even though it owes Plaintiff nothing.

### D. Plaintiff's section 15(d) claim fails in any event

Plaintiff's threadbare allegations come closest to suggesting, but not adequately pleading, that Kronos transmitted her data, not that it disclosed her data. (Compl. ¶¶ 35, 56). Such conduct is regulated, if at all, by section 15(e), not section 15(d).

#### 1. BIPA distinguishes between "disclosure" and "storage and transmission"

BIPA regulates disclosure, storage, and transmission of biometric data differently. Disclosure is governed by section 15(d), which permits disclosure with consent, or if certain other criteria are met. 740 ILCS 14/15(d). Storage and transmission are governed by section 15(e), which requires that entities "store, transmit, and protect from disclosure all . . . biometric information using the reasonable standard of care." § 15(e).

The terms "disclose," "store," and "transmit" are different words, and each refers to a different action. "[W]here different words are used in the same statutory provision, such words are deemed to have different meanings unless a contrary intention is manifest." *People v. Russell*,

---

[3] *See* Ex. B, Plaintiffs' Class Action Complaint in *Figueroa v. Kronos, Inc.*, No. 19-cv-01306 (N.D. Ill., notice of removal filed Feb. 22, 2019), in which the same plaintiffs' counsel allege that Kronos has a BIPA-compliant policy in effect. (*See* Ex. B ¶ 28.) The Policy is also publicly available, as the same counsel acknowledged in the *Figueroa* lawsuit. (*Id.*) Kronos' Data Privacy Policy is available at https://www.kronos.com/privacy-policy.

492 N.E.2d 960, 965 (Ill. App. 1986). The term "disclose" means "to make known or public," or "to show after a period of inaccessibility or of being unknown." *Black's Law Dictionary* (10th ed. 2014).[4] It also means "to expose to view." *Merriam-Webster* (2018). Transmit, by contrast, means "to send or transfer (a thing) from one person or place to another." *Black's Law Dictionary*.

Thus not every transmission is—or results in—a disclosure. To illustrate, suppose valuables are placed in a strongbox and sent to a bank for safekeeping. The valuables have been transmitted, but they certainly have not been disclosed to the bank. This is the precise line the legislature drew in sections 15(d) and (e). Entities must not disclose biometric data—meaning actually reveal it—to another party without the subject's consent. 740 ILCS 14/15(d). And when transmitting it, such as to a data center for storage, they must exercise reasonable care to "protect [it] from disclosure"—that is, ensure that it is *not* exposed to view. 740 ILCS 14/15(e). Indeed, if each data transmission were also a disclosure under section 15(d), an entity could never transmit biometric data while also *protecting* it from disclosure—a combination section 15(e) expressly authorizes.

### 2. Plaintiff alleges no facts to support a section 15(d) "disclosure" claim

Thus to state a claim under section 15(d), Plaintiff must allege an <u>unauthorized</u> disclosure—meaning actual exposure to a third party. Plaintiff falls well short, as she solely alleges, "[u]pon information and belief," that Kronos "disclose[s] [Brookdale employees'] fingerprint data to other, currently unknown, third parties, which host biometric data in their data centers." (Compl. ¶ 35.) This speculative, conclusory allegation cannot support a disclosure claim under section 15(d). *See, e.g.*, *Brickstructures, Inc. v. Coaster Dynamix, Inc.*, No. 16 CV 10969,

---

[4] Courts "may consult [dictionaries] when attempting to ascertain the plain and ordinary meaning of a statutory term where, as here, the term has not been specifically defined by the legislature." *Rosenbach*, 2019 IL 123186, ¶ 37.

2017 WL 4310671, at *4 (N.D. Ill. Sept. 28, 2017) ("[A]llegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard."). The Complaint is devoid of the sort of "specific facts," *Brooks*, 578 F.3d at 581, which would suffice under *Twombly* to allege disclosure. *See, e.g.*, *Citizens United v. Schneiderman*, 882 F.3d 374, 384–85 (2d Cir. 2018) ("There is no reason Appellants could not find at least one inadvertent publication . . . . They are, after all, alleging *public* disclosures, which, by their very nature, would be easy to discover . . . ."). Given that disclosure means "to expose to view" or "make known or public," Plaintiff must allege that Kronos permitted a third party to actually view or access her data.

Storage in a third party's data center (Compl. ¶ 35) does not "expose [biometric data] to view." *Merriam-Webster*. Crucially, Plaintiff does not allege that these third parties viewed, accessed, or handled her data—only that they "host" it. (*Id.*) This is nothing more than a transmission for the purpose of storage—much like sending valuables in a strongbox to the bank—and is the precise conduct expressly authorized by section 15(e). In addition, no facts are alleged that any such transmissions were compromised or hacked. Accordingly, even if Kronos owed these duties to Plaintiff (it does not) and this conduct were properly alleged (it is not), this conduct would not implicate section 15(d). Plaintiff simply fails to state a section 15(d) claim "that is plausible on its face." *Twombly*, 550 U.S. at 570. It should be dismissed.

## II.     PLAINTIFF'S SECTION 15(B) CLAIM MUST BE DISMISSED

Plaintiff also fails to plead facts placing Kronos within any category of collectors of biometric data under BIPA, warranting dismissal of her claim that Kronos should have provided her with notice and obtained her consent under section 15(b).

### A.      In the employment context, only employers must comply with section 15(b)

BIPA's text makes clear that, in the employment context, *employers* are responsible for procuring a subject's informed consent to collection of biometric data. Collectors of biometric

8

data must make certain disclosures and "receive a written release executed by the subject." 740 ILCS 14/15(b). According to BIPA, in the employment context, a "written release" is "a release executed by an employee as a condition of employment."[5] § 10.

Thus in the employment context, as here, a "written release" under BIPA can mean nothing else. It would make no sense to require Kronos, which had no relationship with (or knowledge of) Plaintiff, to procure a written releases from her as a condition of employment. *Id*. Plaintiff was not a Kronos employee, and Kronos thus could not procure from her—nor could she give Kronos— anything as a condition of employment. Courts "presume the legislature did not intend absurd, inconvenient, or unjust consequences." *In re Marriage of Goesel*, 2017 IL 122046, ¶ 13; *see also People v. Hanna*, 800 N.E.2d 1201, 1207–09 (Ill. 2003) (rejecting statutory construction leading to "absurd result" that regulated entity would be unable to comply with the statute's requirements). And as the *Rosenbach* Court noted in construing BIPA, "[c]ompliance [with section 15(b)] should not be difficult." *Rosenbach*, 2019 IL 123186, ¶ 37. Accordingly, in the employment context, section 15(b)'s "written release" requirement applies only to employers.[6]

---

[5] "When a statute defines its own terms, those terms must be construed according to the definitions given them." *Boaden v. Dep't of Law Enf't*, 267 Ill. App. 3d 645, 651–52 (4th Dist. 1994).

[6] This reading coheres with the way in which other courts, including the Illinois Supreme Court, have interpreted other statutes establishing employee rights. These interpretations place the onus on the *employer*, *not* on third parties or vendors. *See, e.g., Andrews v. Kowa Printing Corp.*, 838 N.E. 2d 894, 896–902 (Ill. 2005) (third-party entity that "provided substantial administrative support to [employer], including payroll, purchasing, and accounting services" was not liable for unpaid wages under the Illinois Wage Payment Act; "rather, . . . an employer is liable for both its own Wage Act violations and those of its agents"); *Equal Opportunity Comm'n v. Cummins Power Generation Inc.*, 313 F.R.D. 93 (D. Minn. 2015) (employer that used third-party vendor to conduct employee health assessments was responsible for vendor's medical questionnaire to the extent it violated employee statutory rights).

9

**B.**     **Section 15(b)'s notice and consent requirements govern only those that directly "collect" or "capture" an individual's biometric data**

Section 15(b) applies narrowly outside the employment context as well, governing only those entities that directly collect or capture biometrics from the subject. BIPA's text, purpose, and structure all compel this limited reading.

**1.**     **Section 15(b) applies only to direct collectors of biometric data**

In drafting section 15, the legislature used the passive term "in possession" in sections (a), (b), (c) and (e). Section 15(b), in contrast, omits the term "in possession" and instead places notice and consent obligations only on those entities that "collect, capture, purchase, receive through trade or otherwise obtain" biometric data. *See* 740 ILCS 14/15(b). As the Illinois First District has noted, "[w]here the legislature uses certain words in one instance and different words in another, it intended different results." *Dana Tank Container, Inc. v. Human Rights Comm'n*, 687 N.E.2d 102, 104 (Ill. App. 1997); *accord, In re D.W.*, 827 N.E.2d 466, 479 (Ill. 2005) ("to express or include one thing implies the exclusion of the other").

Section 15(b)'s four verbs—"collect, capture, purchase, [or] receive through trade"— contemplate <u>direct</u> collection of an individual's biometrics. Because an entity obviously cannot possess data without having obtained it from somewhere, holding that section 15(b) applies to all entities that obtain data—from whatever source—would sweep all possessors within its ambit and nullify the legislature's distinction. This Court is not at liberty to do that. *See Rosenbach*, 2019 IL 123186, ¶ 24 (When interpreting BIPA, courts "may not depart from the law's terms by reading into it exceptions, limitations, or conditions the legislature did not express, nor . . . add provisions not found in the law."). Mere "possession" does not trigger section 15(b). This, in turn, compels a limited reading of section 15(b): it governs only those that collect data directly from the subject. Holding otherwise would ensnare all possessors and undo the legislature's tailored scheme.

Section 15(b)'s use of the phrase "or otherwise obtain" does not alter this result. To "obtain" is "[t]o *bring into* one's own possession; to procure, *esp. through effort*," *Black's Law Dictionary* (10th ed. 2014) (emphasis added), or "to gain or attain usually by planned action or effort." *Merriam-Webster* (2018). And "when a statutory clause specifically describes several classes of persons or things and then includes 'other persons or things,' the word 'other' is interpreted to mean 'other such like.'" *Pooh-Bah Enter., Inc. v. Cnty. of Cook*, 905 N.E.2d 781, 799 (Ill. 2009). Thus, "or otherwise obtain" must also contemplate the <u>direct</u> acquisition of biometric data from the subject.

If the legislature had intended to bring all private entities who are mere possessors of biometric data within section 15(b)'s purview, it would have explicitly done so—precisely as it did with regard to sections 15(a), (c), (d), and (e). This conscious omission evinces a clear intent to narrow section 15(b)'s scope to direct collectors. This Court must "give effect to the legislature's intent." *Hanna*, 800 N.E.2d at 1207.

Here, Plaintiff has alleged that Kronos is an out-of-state vendor of time clocks. Compl. ¶¶ 35–36. Kronos' very limited role is distinguishable from other types of technology which are alleged to have actively collected and used purported biometric data. *See, e.g.*, *Vigil v. Take-Two Interactive Software, Inc.*, 235 F. Supp. 3d 499, 505 (S.D.N.Y. 2017), *aff'd in part, vacated in part, remanded sub nom. Santana v. Take-Two Interactive Software, Inc.*, 717 F. App'x 12 (2d Cir. 2017) ("*Vigil*") (video game developer and distributor used cameras connected to the gaming platform to scan the gamer's face and head to create an avatar); *Monroy v. Shutterfly, Inc.*, No. 16 C 10984, 2017 WL 4099846, at *1 (N.D. Ill. Sept. 15, 2017) ("*Monroy*") (facial recognition software used to tag images with individuals' names within database). Plaintiff here asserts no allegations like those set forth in *Vigil* or *Monroy*.

### 2. BIPA's structure and purpose confirm that only direct "collectors" are obligated to procure informed written consent prior to collection

BIPA was designed to promote the use of biometric technology by assuaging individual privacy concerns. *See* 740 ILCS 14/5. To this end, BIPA carefully assigns distinct sets of obligations to specific actors. By requiring collectors of biometric data to furnish notice and obtain a written release, section 15(b) secures the benefits of informed consent for Illinois citizens. But unlike BIPA's other sections, section 15(b) omits mere possessors from its scope. This purposeful omission plays an important role in achieving BIPA's aims.

Extending section 15(b) further arguably would require entities like technology vendors or data storage centers to obtain consent from all of their clients' Illinois employees—a group with whom they have no relationship at all—while delivering *nothing* that these employees did not already receive from their employer under section 15(b). Application of section 15(b) in these circumstances would hamper the development and use of biometric technology in Illinois and raise new and different employee privacy concerns. It cannot be the intended result. By limiting section 15(b) to direct collectors and sections 15(a) and (d) to possessors, the legislature purposefully avoided imposing duplicative, unachievable notice and consent burdens on mere possessors of biometric data. Thus common sense compels the same reading required by BIPA's text.

### 3. Construing section 15(b) to apply more broadly would produce absurd results and render BIPA unworkable

Construing section 15(b) more broadly also would yield patently absurd results. "[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982). To avoid being named in BIPA suits, Kronos, for example, would need to procure informed consent from a potentially massive swath of Illinoisans: any employee or customer of a Kronos client, where the client collected and stored biometric data

in the client's database. *See* Compl. ¶ 34. It is unclear how Kronos would ever even identify or have contact with these employees or this data.

For data centers that physically house Kronos clients' databases, the burden would prove exponentially heavier. Plaintiffs' lawyers surely would argue—even if incorrectly—that a data center physically housing its clients' databases "obtained" the information stored in them. To protect themselves, data centers would need to procure informed consent from anyone whose biometric information is stored in a database physically housed at its facility. Meanwhile, an Illinois citizen who uses a finger-scan time clock at work would be asked to provide their written consent three times—to three distinct entities—which would be "difficult." *See Rosenbach*, 2019 IL 123186, ¶ 37. Such would give rise to an expansive web of potential liability and compliance costs and thereby threaten BIPA's ultimate aim: realizing the "promise" of biometric technologies. *See* 740 ILCS 14/5. This Court should construe section 15(b) literally and thereby avoid this absurd result.

### C. Plaintiff does not sufficiently allege that Kronos directly "collected" or "captured" her biometric data

Plaintiff does not allege a single fact to support her conclusory claim that Kronos collected her data without first obtaining a written release. (Compl. ¶¶ 83–86.) Plaintiff cannot satisfy *Twombly* by "merely parrot[ing] statutory language of the claims that they are pleading . . . rather than providing some specific facts to ground those legal claims." *Brooks*, 578 F.3d at 581. To the contrary, Plaintiff consistently asserts only that Brookdale collected her biometric data. (*See, e.g.*, Compl. ¶¶ 32–33 ("[W]hen employees are hired by Brookdale, they are required to have their fingerprints captured . . . . [A]ll Brookdale hourly employees must use their fingerprints to clock-in and clock-out for attendance.").) The sole fact alleged as to Kronos is that it "supplied" the "employee time tracking system" to Brookdale. (*Id.*) Kronos has no relationship at all with

13

Plaintiff or any other Brookdale employee; Kronos did not collect Plaintiff's data from her, and she does not plausibly allege as much. Kronos could not have obtained a "written release" from Plaintiff "as a condition of employment"—Kronos is not her employer. 740 ILCS 14/10. A statute should be interpreted within the context of the "real-world activity" that it is intended to regulate so as not to produce absurd results. *See Hanna*, 800 N.E.2d 1201 at 1209–11 (reversing decision in which lower court's failure to take into account the real-world context created a "clearly untenable" construction). Kronos owed no section 15(b) duties to Plaintiff, and her claim should be dismissed.

## III. PLAINTIFF'S FAILURE TO PLEAD NEGLIGENCE, RECKLESSNESS, OR INTENT PROVIDES ADDITIONAL GROUNDS FOR DISMISSAL

Even setting aside all of the foregoing, Plaintiff's claims still would fail because "the [Biometric Information] Privacy Act only subjects violators to statutory damages if there is negligence or willfulness." *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1104 (N.D. Ill. 2017). Specifically, BIPA's statutory damages provision provides:

> A prevailing party may recover for each violation . . . against a private entity that *negligently* violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater; against a private entity that *intentionally or recklessly* violates a provision of this Act, liquidated damages of $5,000 or actual damages, whichever is greater.

740 ILCS 14/20(1)–(2) (emphasis added). Thus, per BIPA's own terms, not every violation is actionable. A statute's words "cannot be read in a fashion that would render other words or phrases meaningless, redundant, or superfluous." *People v. Trainor*, 752 N.E.2d 1055, 1063 (Ill. 2001). Concluding that Plaintiff sufficiently alleged negligence, recklessness, or intent by alleging a mere violation would render superfluous those terms as included in the statute. In other words, there is a difference between a BIPA violation and an actionable BIPA violation. Plaintiff must also plead culpability.

14

Plaintiff does not allege any facts suggesting that Kronos has been negligent, reckless, or intentional. Rather, Plaintiff merely claims that Kronos "fails to comply with [BIPA's] mandates," (Compl. ¶¶ 74, 84), and seek "statutory damages of $5,000 for each willful and/or reckless violation or, in the alternative, statutory damages of $1,000 for each negligent violation." (*Id.* ¶¶ 81, 92, 102.) At no point does Plaintiff suggest *which alleged violation was which,* apparently content to let this Court sort that out. Such falls well short of her pleading burden.

It is unclear, moreover, how Kronos could be said to have acted negligently. Nothing about BIPA's text, purpose, or structure—or Kronos' status as an out-of-state vendor of technology that is implemented, controlled and utilized by its customer users—could reasonably have put Kronos on notice of some statutory duty it owed under Illinois law to a client's employees. This is particularly true because BIPA places the duty on employers—not vendors—to obtain written consent from their employees when using biometrics in the employment context. 740 ILCS 14/10.

At the very least, this Court should strike from the Complaint Plaintiff's prayer for the $5,000 statutory award. (*See* Compl. ¶¶ 81, 92, 102.) Nothing in the Complaint suggests that Kronos recklessly or intentionally violated any duty it owed her. To plead recklessness or intent, a plaintiff "must first plead the elements of negligence . . . and then also plead a heightened state of mind." *Papadakis v. Fitness 19 IL 116, LLC*, 2018 IL App (1st) 170388, ¶ 22. Plaintiff simply asks for "statutory damages of $5,000 for each willful and/or reckless violation"—again without pleading which violation was which. (*See* Compl. ¶¶ 81, 92, 102.) Put simply, Plaintiff alleges no facts that suggest even negligence—let alone recklessness or intent. This failure provides an independent ground upon which to dismiss all three of Plaintiff's BIPA claims.

## **CONCLUSION**

For all of the reasons articulated herein, this Court should dismiss Plaintiff's Complaint as to Kronos.

Dated: June 19, 2019                                 Respectfully submitted,

**KRONOS INCORPORATED**


By:   */s/ Erin Bolan Hines*
Melissa A. Siebert
Erin Bolan Hines
Ian Hansen
SHOOK HARDY AND BACON, L.L.P.
111 S. Wacker Dr.
Chicago, IL 60606
Tel.: 312.704.7700
Fax: 312.558.1195
masiebert@shb.com
ehines@shb.com
ihansen@shb.com

*Attorneys for Defendant Kronos Incorporated*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 19, 2019, I electronically filed the foregoing **KRONOS INCORPORATED'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all Counsel of Record. Parties may access this filing through the Court's system.

*/s/ Erin Bolan Hines*